# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>CARLOS TAMAI-ARBALLO,<br><br>                              Defendant. | Case No.: 19-CR-1019 DMS<br><br>**ORDER DENYING MOTION FOR SENTENCING MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

Before the Court is Defendant Carlos Tamai-Arballo's motion to reduce his sentence under 18 U.S.C. § 3582(c). The United States of America filed a response in opposition and Defendant filed a reply. For the following reasons, Defendant's motion is denied.

## I.
## BACKGROUND

On December 6, 2019, the Court sentenced Defendant to 36 months of imprisonment, followed by three years of supervised release, for violating 21 U.S.C. § 841(a)(1), Possession of Methamphetamine with Intent to Distribute. (Judgment, ECF No. 37.)

Defendant is 38 years old and suffers from obesity, atrial fibrillation, and hypertension. (Mot. at 2-3.) The Centers for Disease Control and Prevention (CDC)

identifies obesity as a condition placing an individual at increased risk of severe illness from COVID-19. *See Groups at Higher Risk for Serious Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Defendant is currently incarcerated at the Giles W. Dalby Correctional Facility in Post, Texas. His expected release date is September 16, 2021. (Mot. at 2.) Due to the risks associated with COVID-19 and the inability to socially distance in a custodial setting, Defendant now seeks a reduction of his sentence to time served.

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The First Step Act ("FSA") is such a statute. *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018). Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the Bureau of Prison ("BOP") process.

Section 3582(c) of Title 18 of the United States Code provides that a court may not modify a term of imprisonment except "upon motion of Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a prerequisite to filing the motion in district court, and "[e]xhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted). Here, Defendant submitted his request for compassionate release to the warden on July 10, 2020. (Mot. at

5.) On July 28, 2020, the warden denied Defendant's request. (*Id.*) Because the warden has denied Defendant's request, the Court may address the motion on its merits.

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a reduction, the reduction complies with 18 U.S.C. § 3553(a), and the defendant "is not a danger to the safety of any other person or to the community[.]" *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("U.S.S.G") § 1B1.13. Defendant contends he meets the foregoing criteria. As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

1. Extraordinary and Compelling Reasons

Defendant argues he is eligible for compassionate release because his underlying health conditions make him particularly vulnerable to COVID-19. (Mot. at 6.) The Sentencing Guidelines provide that extraordinary and compelling reasons may exist for compassionate release where a defendant suffers from, among other conditions, "a serious physical or mental condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G § 1B1.13, cmt n.1(A)(i)(I). Defendant suffers from obesity, a condition that the CDC deems to increase the risk of serious illness from COVID-19. Defendant also suffers from atrial fibrillation and hypertension, which the CDC believes may increase the risk of serious illness from COVID-19. Defendant takes four medications to treat atrial fibrillation and hypertension. (Mot. at 3-4.)

The United States contends that Defendant is not entitled to compassionate release because he has failed to show that his medical conditions quality as "extraordinary and compelling reasons" supporting his release. (Opp. at 14.) The United States acknowledges that the CDC has identified obesity as a condition that increases the risk of serious illness from COVID-19. (*Id.*) Nevertheless, the United States argues that obesity alone, especially when Defendant's BMI is "35.9-36.5" which is only slightly above the CDC's BMI threshold of 30, is not enough to be deemed "extraordinary and compelling

3

circumstances." (Opp. at 15.)  Regarding Defendant's other medical conditions, atrial fibrillation and hypertension, the United States correctly notes that they are identified by the CDC in the "second tier of risk factors" as conditions that might increase the risk for severe illness from COVID-19.  (Opp. at 16.)  The United States emphasizes that the Defendant is being provided medication to treat atrial fibrillation and hypertension.  (*Id*.) Moreover, Defendant claims that the very reason that he agreed to transport methamphetamine was because he could not afford the medication that he needed.[1]  (Mot. at 2; Opp. at 18.)

At the time of filing of the United States' response, the Giles W. Dalby Correctional Facility had no positive cases of COVID-19.  (Opp. at 6.)  Furthermore, when the prison had a COVID-19 outbreak earlier, Defendant states that the prison moved him and other medically vulnerable men to a new location.  (Mot. at 13.)

Given the fact that the prison is providing Defendant with medical care and taking precautionary measures to move Defendant to another location when there has been a COVID-19 outbreak, Defendant fails to show that his medical conditions, combined with the level of treatment he is receiving in custody, "substantially diminish[]" his ability "to provide self-care within the environment of a correctional facility" during the pandemic. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

2. Danger to Others or the Community

Even where extraordinary and compelling reasons exist, the court must consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"  U.S.S.G. § 1.B1.13(1)(A), (2) cmt. n. 1.  To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among

---

[1] Defendant states in his Reply that he also still suffers from cardiomyopathy, which the CDC has identified as a condition that increases the risk of serious illness from COVID-19. (Reply at 2-3.) But the medical record indicating the cardiomyopathy diagnosis is dated 2009 and the more recent prison medical record does not indicate that Defendant currently suffers from cardiomyopathy. (Exhibit A, ECF 42.) In any case, Defendant states that he is receiving medication to manage cardiomyopathy as well. (Reply at 3.)

4

other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose. These factors are addressed in turn and overlap with the § 3553(a) factors.

While Defendant was convicted of possession of methamphetamine with intent to distribute, a non-violent offense, the United States contends that Defendant poses a danger to the community because Defendant would have the same motivation to commit crime as he did when he agreed to transport methamphetamine. (Opp. at 18.) Defendant admits that he agreed to transport methamphetamine because he needed money to pay for his medication and that he will have to figure out a way to afford his medications once he returns home to Mexico. (Mot. at 2; Reply at 7.) But Defendant was convicted of a non-violent drug-trafficking offense and has no prior convictions or history of committing or otherwise engaging in acts of violence. (Mot. at 15; PSR, ECF 23 at ¶ 29.) Defendant's record does not indicate a propensity for violence or danger to others.

3. <u>§ 3553(a) Factors</u>

Finally, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1),(6).

Defendant contends that these factors weigh in favor of his release because Defendant has spent the last several months living in constant fear that he will contract COVID-19, especially with his underlying health conditions. (Mot. at 16.) Although the Court is sympathetic to the risks that Defendant faces in light of COVID-19, Defendant is receiving medical care in prison, thus serving the interests of § 3553(a)(2)(D).

Defendant also argues that further time in custody is not necessary to deter Defendant and that if the Court were to sentence Defendant now, during the COVID-19 pandemic, Defendant would likely be sentenced to less time. (Mot. at 17.) On the other hand, the United States contends that the § 3553(a) factors weigh against release because Defendant's sentence of 36 months is already less than the guideline range of 46-57 months. (Opp. at 19.) The United States believes that if the Court granted Defendant's motion with approximately 11 months of imprisonment and 3 years of supervised release still left in his sentence, an unwarranted sentencing disparity would result. (*Id.*) Home confinement is not a possibility for Defendant because of his immigration detainer. Defendant would be processed through ICE and deported. (*Id.*)

Under § 3553(a), the Court finds that Defendant's 36-month sentence is not greater than necessary to address the overarching goals of punishment, deterrence, protection of society, and rehabilitation. These factors weigh against releasing Defendant at this time.

### III.

### CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for compassionate release is respectfully denied.

**IT IS SO ORDERED.**
Dated: October 19, 2020

_____
Hon. Dana M. Sabraw
United States District Judge